STATE of Missouri, Plaintiff-Respondent,

v.

Charles D. TAYLOR, Defendant-Appellant.

No. 34952.

Missouri Court of Appeals,
St. Louis District,
Division One.

June 5, 1973.

Motion for Rehearing or Transfer Denied
Aug. 16, 1973.

Robert C. Babione, Terry B. Crouppen, Public Defender Bureau, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Jefferson City, Steve Hayne, J. Brendan Ryan, Circuit Atty., Wm. M. Frain, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Acting Presiding Judge.

Defendant was found guilty by a jury of striking and kicking a police officer in vio-lation of Section 557.215, RSMo 1969, V. A.M.S. Defendant had been charged un-der the second offender act and upon a de-termination that he had been previously convicted of a felony, he was sentenced to four years in the Department of Correc-tions. He now appeals, contending among other things that reversible error was com-mitted in the trial of the case because the court permitted, over objection, cross-ex-amination of one of defendant's witnesses as to how many times he had been arrested by the police. Because of this improper cross-examination, we reverse and remand for a new trial.

Defendant, Charles D. Taylor, was ar-rested at about 12:30 a. m. on June 21, 1972. This arrest followed a complaint with regard to a peace disturbance by de-fendant's mother. Two officers investigat-ed the disturbance report and made the ar-rest. One testified that after advising the defendant he was under arrest, he immedi-ately began to advise defendant of his con-stitutional rights. The officer placed the scene of this confrontation with defendant on the sidewalk in front of the building where he had found the defendant. The officer testified that defendant shouted an obscenity at him and kicked him in the groin. The other patrolman under this version then struck the defendant with his night stick and the officer who had been kicked also struck defendant with his night stick and the defendant then fell to the ground. The officer succeeded in placing one handcuff on him and he broke away and started to get up. This officer then struck him again with his closed fist. De-fendant stood up and struck the other pa-trolman at which time the other officer struck him again with his night stick. The defendant by this time was subdued and was handcuffed.

The defense called as a witness one George Lindsay who lived at the same ad-dress where the incident occurred. He tes-tified to a different state of facts. Under his version he said that he saw the appel-lant in the back of the police car with his

feet out on the curb. Defendant then made a move to get out of the police car saying: "You are not going to arrest me because I haven't done nothing." But the officers thereupon grabbed the defendant, started to handcuff him, hit him with a club, and threw him into the car. Then, according to Lindsay, the appellant struggled back, fell forward and knocked an officer down. After that, numerous officers arrived, grabbed the appellant trying to get him back in the car, repeatedly hitting and kicking him. On cross-examination, this witness was asked if he had "ever been in trouble with the police". To this an objection was made and overruled. At this stage of the trial, the witness was asked whether he had ever been arrested by a policeman, and how many times. An objection to this cross-examination was overruled and the witness was compelled to testify that in his best estimate he had been arrested about a dozen times. The prosecutor made reference to the arrests in his closing remarks and suggested to the jury that the witness was prejudiced against the police department. To this statement, objection was made. The court sustained the objection and instructed the jury to disregard the statement of the prosecutor.

■ As pointed out by the defendant, Missouri law clearly holds that the credibility of a witness may not be attacked by showing an arrest, investigation, or criminal charge which has not resulted in a conviction. Upon a review of the authorities on this subject contained in the recent opinion of this court in State of Missouri v. Jerome Oliver Williams, 492 S.W.2d 1, decided February 20, 1973, we stated: "[I]n * * * State v. Sanders, Mo., 360 S.W.2d 722, 725 * * * the Court said that ' * * * a witness' credibility may not be attacked by showing a mere arrest, investigation, or criminal charge which has not resulted in a conviction * * *'." The prosecution in that case had asked a defense witness about a police investigation involving her, and when she answered in the negative, produced a police officer who

testified in rebuttal. The error was therefore double, in permitting the question, and in violation of the rule that the cross-examiner is bound by the witness' answer.

"While an adverse party is privileged under statute to ask a witness about the nature of prior criminal convictions, whether felony or misdemeanor, (§ 491.050 RSMo 1969, V.A.M.S.), questions about acts of misconduct not resulting in conviction have been held improper. See State v. Sanders, supra, and Holden v. Berberich, 351 Mo. 995, 174 S.W.2d 791, 149 A.L.R. 929, (question about indictment and charge for driving while intoxicated ruled improper); and Hoffman v. Graber, Mo.App., 153 S.W.2d 817, (question about charge of disturbing the peace held improper). A similar restriction has been applied to juvenile offenses. State v. Tolias, Mo., 326 S.W.2d 329. Courts have only found exceptions to this rule in cases where the interrogation is necessary to show the bias or motive of a prosecution witness; for example, that an indictment or charge has been dropped in return for desired testimony. See 20 ALR 2d 1421, 1425." We have held it reversible error for a witness to be impeached by a showing of arrest where he had also been convicted of an offense. "Our rule is that even where the conviction or convictions are admitted, it is reversible error to inquire into a party's or a witness' arrest or arrests". Harris v. Williams, 363 S.W.2d 51, 54 (Mo.App.1962). In Harris, the objection to the question on arrest was sustained but the trial court failed to instruct the jury to disregard the questioning and overruled the request for a mistrial. Despite the sustension of the objection, we held that the plaintiff was entitled to a new trial on the basis of improper questioning.

■ Here the two patrolmen were the witnesses for the state. They testified as to one version of what had occurred. The defendant's father and mother testified to another version of the facts which favored

the defendant. Lindsay was the only witness at the trial who had not engaged in the disturbance, the arrest, and was not related to defendant. His testimony supported that of defendant's other two witnesses. The cross-examination to bring out the fact that he had been previously arrested was highly improper and prejudicially erroneous.

Because two other alleged errors may also be asserted at time of retrial, we will attend to them now. Defendant contends that the information was fatally defective in this case because it merely referred to "Patrolman James Connor, a member of the St. Louis Metropolitan Police Department." Defendant maintains that the information charging him with the crime of striking a police officer should specifically describe the policeman struck as a "police officer". In his argument, the defendant asserts that "Patrolman" may have been the victim's first name and that "member" of the police department does not necessarily mean a police officer. We find this contention without merit. The case relied on by appellant, State v. Vonderau, 438 S.W.2d 271 (Mo. banc 1969), held only that an indictment for striking a police officer under Section 557.215 RSMo 1969, V.A.M.S., is defective if it omits the word "feloniously". The information in this case did not omit this word. Moreover, the indictment in *Vonderau* described the policeman in exactly the same language as that used in the information in the present proceeding. The court there found no fault with the description of the officer. In testing the sufficiency of an information, we follow these general principles: it must state essential facts constituting the offense charged, and it must adequately notify defendant of the charge against him, and constitute a bar to further prosecution for the same offense. Hodges v. State, 462 S.W.2d 786, 789 [1] (Mo.1971). The information in this case clearly meets this test.

Defendant further contends that it was error for the trial court to refuse to instruct the jury on the lesser included offense of common assault since the evidence as presented would have supported such a charge. Section 557.215 RSMo 1969, V. A.M.S., is directed to all willful assaults on police officers. There is no lesser included offense where a striking is shown and no controversy appears over whether the victim was a police officer or engaged in the performance of his duties. Under this state of facts the court is not required to give an instruction on common assault. State v. Jacks, 462 S.W.2d 744, 748 [7] (Mo.1970).

Additional charges of error by defendant in the trial of his case are based upon statements made by the assistant circuit attorney in his final argument. Since we have already determined that the defendant is entitled to a new trial, we doubt that these alleged improprieties will reoccur. In the charged atmosphere of the courtroom concerned advocates will sometimes come too closely to the edge of reversible error with their comment. Even when a case seems to be won and a point in the argument is firmly established, there is a great temptation to drive another spike in the plank. We believe that these problems can be eliminated by counsel at the next trial, and if not, then they can be controlled by the trial court.

For the reasons heretofore given, the judgment is reversed and the case remanded for a new trial.

McMILLIAN, J., concurs (separate opinion).

CLEMENS, J., dissents (separate opinion).

McMILLIAN, Judge (concurring).

I concur.

This appeal once more raises the rule of evidence prohibiting cross-examination of a witness about prior arrests, charges, or indictments which do not lead to conviction. The State now urges the court to re-

lax the rule where the cross-examiner is trying to show that the witness is biased or has an interest in the outcome of the trial. The witness in this case contradicted the police version of a scuffle between defendant and two police officers. The State asserts that it may impeach the witness by placing his arrest record before the jury to show that he was prejudiced against policemen and may have been lying to "get back" for past arrests.

The State's argument shows that confusion still surrounds the evidentiary rule against admission of police records to impeach a witness' character for truthfulness. I find (1) that the rule is strict and allows rare exceptions; (2) that prior arrests do not, in any event, establish bias or interest in the outcome of a criminal prosecution; and (3) that the use of police arrest records to impugn a witness' good name tends to discriminate invidiously against black people as a class and should be prohibited as a matter of public policy.

The majority opinion sets out in some detail the rule prohibiting cross-examination about arrests, charges, or indictments. I would add that this rule does not admit to the policy of multiple admissibility, whereby evidence which is inadmissible for one reason becomes admissible for another.

Furthermore, the rule allows few exceptions. As this court noted in State v. Williams, 492 S.W.2d 1 (Mo.App.1973), a prosecution witness may be cross-examined about an indictment in the same court if such questioning would tend to show that the witness' testimony may have been influenced by an offer of leniency or immunity. See State v. Bradley, 234 S.W.2d 556 (Mo.1951) and State v. Hector, 19 Ohio St.2d 167, 249 N.E.2d 912 (1969). An exception has also been found where two persons have been indicted for the same offense and one testifies in support of the other. Cross-examination about the fact of the indictment has been allowed to show mutuality of interest between the two

defendants. Keveney v. State, 109 Ohio St. 64, 141 N.E. 845 (1923).

The reason for the rule against admission of arrest records is fundamental to our system of justice. A man is presumed innocent until proven guilty. Testimony about an arrest is mere hearsay. Without more, it says nothing about a person's guilt or character for truth and veracity. It happens to the innocent as well as the guilty. Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

The State contends, however, that a witness may be cross-examined about his arrest record if the sole purpose of the questioning is to show bias or prejudice against policemen. Implicit in this contention is the argument that the rule against admission of arrest evidence may be evaded by multiple admissibility. This notion has been rejected.

But even if we assume *arguendo* that such evidence might be admitted, I fail to see how a person's arrest record can establish bias or prejudice. The law is well-settled that a cross-examiner may question a witness about his bias or interest in a case in suit. But the bias must be personal against one of the parties to the suit, and the interest must be particular in the outcome of that suit. See State v. Curry, 372 S.W.2d 1 (Mo.1963); State v. Pigques, 310 S.W.2d 942 (Mo.1958) and Thornton v. Vonallmon, 456 S.W.2d 795 (Mo.App. 1970). Here the State alleges only a general prejudice against all policemen as a class. Policemen as a class are not parties to this proceeding.

The fact of past arrests also offers little to show prejudice on the part of the witness towards policemen. The alleged prejudice might just as well be found in both directions. An actual showing of the witness' bias would require more evidence than this, and would lead to time-consuming trials on issues collateral to the defendant's guilt. The basic purpose of the trial

would be lost in a maze of irrelevant and prejudicial (to the defendant) facts.

I am finally convinced that, because of the distinct possibility of discrimination, a person's arrest record should not be used against him in court, for any purpose, as a matter of both law and public policy. Crime and population statistics have established that blacks are arrested much more frequently than whites. According to the Federal Bureau of Investigation, 27 percent of all arrests in 1970 and 1971 have involved Negroes.[1] Yet blacks make up only 11.1 percent of the national population. Other authorities report that adult blacks are arrested about five times as often as whites,[2] and that 56 percent of the black males residing in our major cities have been arrested at one time or another.[3]

If we were to permit the use of police arrest records to impeach witnesses, to show either untruthfulness or bias, we would be allowing the burden of an unsound rule of evidence to fall harder on blacks than whites. Black citizens would be discouraged from appearing in court to exercise their constitutional rights to free speech and a fair trial. Some 56 percent of the black males in society might be effectively foreclosed from giving any testimony at trial. This result is unconscionable. The potential harm of such an exception far outweighs the minimal probative value to be gained by allowing such testimony or cross-examination.

For these reasons and the reasons given in the majority opinion, I concur with the majority in reversing the judgment of the trial court and remanding the case for a new trial.

CLEMENS, Judge (dissenting).

I dissent and would affirm defendant's conviction.

The issue: Where there is conflicting evidence about whether police mistreated defendant when arresting him and a defense witness testified two policemen did mistreat defendant, did the court on cross examination properly allow the State to demonstrate the witness' bias against police by showing the witness had been *arrested* on many occasions?

Two rules of evidence must be reconciled. One declares that although a witness may be impeached by showing he has been convicted of a criminal offense it may *not* be shown he has been arrested for or accused of a criminal offense. We will refer to this as the "arrest rule." The other declares a witness may be cross examined about facts which tend to show he is biased for or against a party and will be referred to as the "bias rule." The reason behind the "arrest rule" is that a convicted person is unworthy of belief; the reason behind the "bias rule" is that the witness' interest affects the weight to be given his testimony.

At common law and by early Missouri statutes persons convicted of certain crimes were considered so depraved in character that they were unworthy of belief and could not "be sworn as a witness." (§ 66, c. 20, G.S.1865: State v. Grant, 79 Mo. 113 (1883)). That disability has long since been removed and § 491.050 now states: "Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proven to affect his credibility . . ."

We noted this statute applies to persons who have been *convicted* of a criminal offense. A long line of cases holds the credibility of a witness, i.e., his general character, cannot be attacked by showing a mere arrest or accusation since that would destroy the presumption of the witness'

1. Federal Bureau of Investigation, Uniform Crime Reports (1970, 1971).

2. The Challenge of Crime in a Free Society. A Report by the President's Commission on Law Enforcement and Administration of Justice, 44 (1967).

3. Supplemental Studies for the National Advisory Commission on Civil Disorders, 247 (1968).

innocence.[1] Applying this "arrest rule" to the case at hand and disregarding the "bias rule," discussed infra, we would have to declare the trial court erred in permitting cross examination to show the witness' multiple arrests.

The "bias rule" has statutory approval by § 491.010: "No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, *but such interest may be shown for the purpose of affecting his credibility* . . ." (Our emphasis). This is also firmly implanted in our case law.

The "bias rule" is tersely stated in State v. Johnson, 163 S.W.2d 780 [8] (Mo.1942): "It is always proper to show the feeling existing between the parties, or that of a witness against or for the parties." The interest of a witness is an essential factor in the fact-finding process. In State v. Pigques, 310 S.W.2d 942 [6] (Mo.1958), the court said: "It is said the bias or prejudice and interest of a witness is never irrelevant, and always may be shown as affecting the witness' credibility." See also State v. Curry, 372 S.W.2d 1 [7] (Mo.1963) and other Missouri cases at notes 30 and 31, 98 C.J.S. Witnesses, § 539, supporting the text statement: "The fact that a witness is interested in the result of the action or proceeding in which he testifies, or is biased or prejudiced in favor of or against any of the parties thereto, is proper to be shown and considered as bearing on the credit which should be accorded to his testimony . . ."

Superficially there is a conflict between the "arrest rule" and the "bias rule" but both are based on the reliability of the witness' testimony. The "arrest rule" challenges the general character of the witness; the "bias rule" challenges only the tendency of a witness to color his testimony in a particular case. The distinction is explained by Wigmore on Evidence, III A, § 943: "Rice, C.J., in McHugh v. State, 31 Ala. 317, 320 (1858): In considering the various modes by which the credit of a witness may be assailed, Courts must observe the distinction between an attack upon his general credit, and an attack upon his credit in the particular case. Particular facts cannot be given in evidence to impeach his general [i.e., moral character] credit only, but may be to affect his particular credit, that is, his credit [due to bias or interest] in the particular cause. Thus the general credit of a witness for the prosecution may be unassailable; he may be hostile to the prisoner, and on cross examination may deny that he is so; in such case, who can doubt the right of the prisoner to prove the hostility?"

The two rules are brought into harmony at 20 ALR 2d, p. 1440–1441, Anno: Witness—Impeachment—Arrest or Charge: "It is generally held, even in jurisdictions where such evidence is not ordinarily admissible, that the fact that a witness has been arrested or charged with crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely."

The distinction was noted in Holden v. Berberich, 351 Mo. 995, 174 S.W.2d 791 [4] (1943), and again in State v. Sanders, 360 S.W.2d 722 [4] (Mo.1962): "An exception to the [arrest] rule has infrequently been noted where the inquiry showed a specific *interest* of the witness."

In this case the prosecutor stated he wanted to show defense witness Lindsay was biased against the State witness police officers because police had arrested him 12 times for acts for which he was never convicted.[2] Defendant's objection was

---

1. Holden v. Berberich, 351 Mo. 995, 174 S.W.2d 791, [1–3] (1943); and cases listed in Note 8 to § 491.050, V.A.M.S.

2. This motive was demonstrated in the prosecutor's closing argument where he said the jury should know how Mr. Lindsay felt about police officers.

based on the "arrest rule." The precise issue here is whether the trial court erred in permitting the cross examination.

Cross examination of a witness to show his interest is an absolute right and "the trial court has considerable discretion as to how far the inquiry may be pursued in detail." Thornton v. Vonallmon, 456 S.W.2d 795 (Mo.App.1970). See State v. Brewer, 286 S.W.2d 782 [3–5] (Mo.1956), holding: "Cross-examination to show motive, interest or animus of a witness may be permitted and, as defendant says in his brief, 'the latitude of cross-examination in a criminal proceeding rests to a very large extent within the discretion of the trial court.'" The case of State v. Sherry, 64 S.W.2d 238 (Mo.1933) concerned cross examination of a witness about "being arrested and whether he had been selling liquor in violation of the law." The court followed the "bias rule" in the case of State v. Nasello, 325 Mo. 442, 30 S.W.2d 132, saying, "If not too remote in time, the admissibility of specific acts tending to impeach or disparage the testimony of a witness is largely within the discretion of the trial court."

Further support for the admission of the challenged evidence is found in the principle that where evidence is admissible for one purpose but inadmissible for another, it should be admitted. See Jackson v. Thompson, 358 Mo. 1001, 218 S.W. 97 [1] (1949), and a host of cases listed at 27 Mo.Dig., Trial, ▮

The trial court having seen and heard the police witnesses and observed the attitude and demeanor of witness Lindsay may well have concluded it was possible Lindsay's contradiction of the police officers' testimony was colored by an animus growing out of his many questionable arrests by other policemen and have also concluded this was permissible evidence for the jury to consider in assessing the weight to be given Lindsay's testimony.

I cannot say the trial court abused its discretion in permitting the challenged cross examination.